ALBERT LORSCH & CO. v. UNITED STATES.

(Circuit Court, S. D. New York. November 11, 1904.)

No. 3,539.

CUSTOMS DUTIES—CLASSIFICATION—MEASUREMENT OF IMITATION PRECIOUS STONES—"DIMENSIONS."

In the provision in paragraph 435, Tariff Act July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 192 [U. S. Comp. St. 1901, p. 1676], for "imitations * * * of precious stones * * * not exceeding an inch in dimensions," the measurement contemplated is that of any single dimension.

On Application for Review of a Decision of the Board of General Appraisers.

The decision subject to review (G. A. 5,661, T. D. 25,251) affirmed the assessment of duty by the collector of customs at the port of New York on merchandise imported by Albert Lorsch & Co. The opinion filed by the board reads as follows:

Sharretts, General Appraiser: The merchandise in question consists of imitations of precious stones exceeding 1 inch in length, but containing less than 1 square inch of superficial surface. It was assessed for duty by the collector at the rate of 45 per cent. ad valorem, under the provision of paragraph 112, Act July 24, 1897, c. 11, § 1, Schedule B, 30 Stat. 158, U. S. Comp. St. 1901, p. 1635, for manufactures of glass or paste, and is claimed by the protestants to be dutiable at 20 per cent. ad valorem, as imitations of precious stones, under paragraph 435, Schedule N, 30 Stat. 192, U. S. Comp. St. 1901, p. 1676. It is conceded that the merchandise is composed of glass or paste made to imitate jade, a semiprecious stone, and that, while it averages less than 1 square inch in size, it exceeds 1 inch in length. The exhibit in the case, taken from the importation, is described on the invoice as item "No. 7115/18, 30x14 millimeters, jade," and represents a cameo, oval in form. Twenty-five millimeters are approximately an inch; hence it will be seen that the articles in question are about 1⅕ inches in length, and three-fifths of an inch in width.

The importers' contention is that, Congress having used the word "dimensions" instead of "dimension" in paragraph 435, at least the average dimension, if not both dimensions, must exceed 1 inch, in order to exclude imitations of precious stones from classification thereunder. Had Congress been legislating with regard to a single substance, there would be much force in this contention. Congress, however, disposed of all kinds of precious stones collectively. The plural word, "imitations," was employed in paragraph 435; and, as a corollary, the plural word "dimensions" was used to make the sentence grammatical. "The plural includes the singular." Endlich on Interpretation of Statutes, par. 388. A fair interpretation of the paragraph in question would seem to be that any imitation of a precious stone that exceeded 1 inch in dimensions, or all imitations of precious stones exceeding 1 inch in dimensions, were excluded from entry under that paragraph. We can see nothing in the choice of language employed by Congress to indicate an intent to include length, breadth, and thickness in the word "dimensions." Had such been its intent, the paragraph would probably have read "not exceeding one cubic inch in dimensions." See paragraph 258, Schedule G, 30 Stat. 171, U. S. Comp. St. 1901, p. 1650. If length and breadth only had been contemplated, paragraphs 101 to 105, inclusive, Schedule B, 30 Stat. 157, 158, U. S. Comp. St. 1901, p. 1634, are persuasive that Congress would have based its limitation

of the size of imitations of precious stones upon the square inch. In the proviso to paragraph 565, § 2, Free List, 30 Stat. 198, U. S. Comp. St. 1901, p. 1684, certain plates or disks are provided for according to diameter. It is not unreasonable to suppose that Congress, having made use of the terms "square inches," "cubic contents," and "diameter," intended the word "dimensions" to refer to linear measurement. The Standard Dictionary defines "dimension" to be any measurable extent or magnitude, as of a line, surface, or solid; especially one of the three measurements—length, breadth, and thickness—by means of which the contents of a cubic body are determined; generally used in the plural. The definition of "dimension" as given in the Century Dictionary is: "Magnitude measured along a diameter; the measure through a body or closed figure along one of its principal axes; length, breadth, or thickness."

Bearing upon the intent of Congress, it is well to quote the provisions of the later tariff acts relating to imitations of precious stones: Act March 3, 1883, c. 121, Schedule N, Sundries, par. 420, 22 Stat. 511. "Compositions of glass or paste, when not set, ten per centum ad valorem." Act Oct. 1, 1890, c. 1244, § 1, Schedule N, par. 454, 26 Stat. 601: "Imitations of precious stones, composed of glass or paste, not exceeding one inch in dimensions, not set, ten per centum ad valorem." Act Aug. 27, 1894, c. 349, § 1, Schedule N, par. 338, 28 Stat. 534: "Imitations of precious stones, not exceeding an inch in dimensions, not set, ten per centum ad valorem." Act July 24, 1897, par. 435, supra: "Imitations of diamonds or other precious stones, composed of glass or paste, not exceeding an inch in dimensions, not engraved, painted, or otherwise ornamented or decorated, and not mounted or set, twenty per centum ad valorem."

During the life of the tariff act of 1883, there is but one case recorded of a controversy between the government and importers relative to the classification of so-called imitations of precious stones. T. D. 7,240. In that case Mr. Fairchild, then Assistant Secretary of the Treasury, quoting from the appraiser's report, said: "The articles consist of pieces of colored glass of oval shape, and from 1 to 6 inches in length, evidently intended for use in ornamenting stained-glass windows." It will be observed that only one dimension, namely, the length of the article, was specified; and it is not unreasonable to suppose that Congress had in mind this case when framing the tariff act of 1890, and imposed a comparatively low rate of duty on imitations of precious stones not exceeding 1 inch, linear measure, in their greatest axis. Such was the meaning given to the term "dimensions" by the customs authorities, and it has been adhered to by them and accepted by importers without protest up to the present time. "In all cases of ambiguity the contemporaneous construction, not only of the courts, but of the department, and even of the officials whose duty it is to carry the law into effect, is universally held to be controlling." Schell v. Fauche, 138 U. S. 562, 572, 11 Sup. Ct. 376, 380, 34 L. Ed. 1040, and cases there cited. "The importance of adherence to a long-continued and reasonable construction of a statute by the officers of the department whose duty it has been to execute it, when the statute is of an ambiguous character, has been frequently commented upon by the Supreme Court ever since the case of Edwards v. Darby, 12 Wheat. 206, 6 L. Ed. 603." United States v. Dean Linseed Oil Co., 87 Fed. 456, 31 C. C. A. 51.

In our opinion, the collector committed no error in classifying the merchandise as manufactures of paste or glass, and assessing it for duty at 45 per cent. ad valorem, under paragraph 112.

No evidence having been offered regarding the other items on the invoice, the collector's classification relative thereto is presumptively correct.

The protest is overruled, and the collector's decision in all respects is affirmed.

Comstock & Washburn (Albert Comstock, of counsel), for appellants.

Charles Duane Baker, for the United States.

HAZEL, District Judge. I concur in the decision of the Board of General Appraisers. It is thought to be reasonably clear that by the use of the word "dimensions" in paragraph 435 of the tariff

act of July 24, 1897, c. 11, Schedule N, 30 Stat. 192 [U. S. Comp. St. 1901, p. 1676], as applied to "imitations of diamonds or other precious stones, composed of glass or paste," Congress intended the word to apply to any single dimension. True, the literal meaning of the word "dimensions" includes length, breadth, and thickness, but there is excellent authority for holding that "the plural includes the singular." Other reasons, unnecessary to here repeat, appear in the opinion of the Board of General Appraisers to show the intention of Congress to regard the word "dimensions" as covering any single dimension.

The decision of the Board of General Appraisers sustaining the collector, who assessed a duty at the rate of 45 per centum ad valorem under section 112 of the tariff act (July 24, 1897, c. 11, § 1, Schedule B, 30 Stat. 158 [U. S. Comp. St. 1901, p. 1635]), for manufactures of glass or paste, is affirmed.